## Case No. 6,618.

### HOLLINGSWORTH v. DUANE.

[Wall. Sr. 147; 4 Dall. 353.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1801.

ALIENAGE OF A JUROR — EFFECT ON VERDICT — WHEN OBJECTION SHOULD BE TAKEN.

Alienage of a juror is cause of challenge, but is not per se sufficient to set aside a verdict, and this whether the party complaining knew the fact or not. The objection should be taken at the time of empannelling the jury.

[Cited in U. S. v. Baker, Case No. 14,499. Quoted in Brewer v. Jacobs, 22 Fed. 238.]

[Cited in Wassum v. Feeney, 121 Mass. 94.]

[This was a motion to set aside a verdict.] On a former day, Mr. Dallas had obtained a rule on the plaintiff, to show cause why a verdict which the plaintiff had obtained against Duane, in an action on a libel, to recover damages, should not be set aside. See Hollingsworth v. Duane [Case No. 6,615]. The ground of Mr. Dallas's motion, was, that the foreman of the jury, which gave the verdict, was an alien, and that Duane was, at the time of empannelling the jury, ignorant of this fact. His proof of his alienage, was the oath of Mr. Leiper, that since the trial, the juror had told him that he, the juror, was not a citizen of the United States.

Mr. Dallas, in support of his motion, now contended, 1. That the system of jury trial, as known in England, and of course with all the English guards and means to secure a fair trial, was in force in Pennsylvania. It was established here by our ancestors, exactly as they knew that it existed at home. It was established here entire. It is spoken of in our colonial records, as a system already known. "Lawful challenges shall be allowed." ("Act for the advancement of justice and more certain administration thereof," passed in 1718, c. 274, § 4.) This referred to challenges lawful by the common law. The Revolution found at its origin, this free, ancient, and entire system existing among us. The constitution ordained by Pennsylvania in 1776, has as a leading feature in its bill of rights: "In trials between man and man, trial by jury shall be held sacred." It alluded to the system; including, of course, the right to challenge for causes, declared by common law, causes of challenge. By the present constitution, it is equally a section of its declaration of rights: "Trials by jury shall be as heretofore." Now, 2. By English law alienage is cause of challenge. I refer to elementary books. 3 Bl. Comm. p. 362. "If a juryman be an alien born, this is a defect of birth." And a man, he tells us just before, may be challenged "propter defectum." Lord Coke to the same point, (Co. Litt. 156,) says a man may be challenged "propter defectum patriae, as aliens born." We have decided

(Republica v. Mesca, 1 Dall. [1 U. S.] 73) that an alien may have aliens on his jury. The converse must hold true, and a citizen may keep them off. Especially is it true in a case like this, a case not addressing itself to the conscience, which is given to all alike; not resting on a violation of moral duty, which alien and native would alike feel, and alike punish, but a case of libel, and involving accordingly some of the gravest and most peculiar rights of an American citizen. Is he on such points as this to have for his judge a man educated under the despotic rule of the autocrat of the North, of the emperor of Austria, or the successors of Charles the First? Our rights and opinions on the subject of the press, are peculiar. What country of Europe has declared that the "printing presses shall be free to every person who undertakes to examine the proceedings of any branch of government," and that "no law shall ever be made to restrain the right thereof." In England the press is much restrained by her institutions, and still more by direct restrictions; and on the continent no man dares, or even thinks of expressing his sentiments respecting others, through the press. They would consider it a high offence to do so; yet with us, this right is regarded as essential to the establishment of the "great and essential principles of free government" (Const. Pa. 9). To form a judgment warranted by our rights, and principles of government; to say what, according to these rights and principles, recognised and ordained, amounts to transgressing the rights of the press, a man must be a citizen of this country; he must know its laws and constitutions; and must of course have been educated here; must have grown on our soil and in our atmosphere. By authority, then, and natural sense, it is clear an alien was incompetent to try this question; that his voice in the verdict accordingly amounts to nothing, and that therefore, this is a verdict by only eleven men; a void verdict; or in other words, no verdict at all. Had we at the time of empannelling these jurors known of this man's incompetence, we should have objected to him then. Having only discovered it since, we may do so now. The cases are numerous; that of Lord Herbert v. Shaw, 11 Mod. 111, is in point. It is there said, "If a party have cause of challenge, and knows of it long enough before the trial, and he does not challenge, he shall not have a new trial; contra, if he has not timely notice of it." The new trial in this case was refused because the party "knew" of the cause of challenge and had not availed himself of it. Of course the inference must be, (what indeed is elsewhere directly stated,) that if he had not known of the cause of challenge, a new trial would have been granted. The reason of the distinction is just: a man shall not when he knows a juror is incompetent, wait to see if the verdict will be for him,

---

1 [Reported by John B. Wallace, Esq. 4 Dall. 353, contains only a partial report.]

and if not ask for a new trial; this would be unfair to the opposite party; but if he don't know of his incompetence, no unfairness can take place. In the first instance, he will be held to have waived the incompetence. In the second, having no knowledge of it, he cannot be supposed to have waived it.

Edward Tilghman and Mr. Ingersoll, said, in reply—1st. That there was no proof of alienage. 2d. That they thought it questionable whether it was cause of challenge in Pennsylvania; but 3d. That at any event the objection was too late after verdict.

GRIFFITH, Circuit Judge. The defendant comes after a trial and verdict, and suggests, that one of the jurors. being an alien, was disqualified, for that reason, to try the question, and as he might have been set aside by challenge and proof of the fact at the trial, it is now competent to examine the qualifications of the juror; and if defective, to avoid the verdict, on the further proof that such defect was unknown to the party. For the sake of putting my opinions on the question as argued by the defendant's counsel, I shall suppose the facts proved, viz. that the foreman is an alien; and that the defendant was ignorant of it when he was sworn. On these premises there is no ground for setting aside the verdict. I admit that it is a good cause of challenge that a juror is an alien; it is so at common law; and so far as the defendant's counsel argued, without any objection. that this and most other causes of challenge at common law were sustainable in the state court of Pennsylvania and the courts of the United States. But it is one thing to set aside a juror on a challenge made to him and substantiated by proof, before he is sworn, at the proper time and place, and by the proper mode of trial, and another to allow the juror to be sworn without objection, and then to set aside the verdict of the whole jury, for a defect of qualification, which, had it been suggested in time, would have been attended with no consequence but that of calling on the next juror named in the panel. It is easy to see to what injurious consequences this practice would lead—of allowing a challenge after a verdict. The causes of challenge are infinite; and perhaps not one jury in ten are sworn, that if the situations. connections, interests and qualifications of each juror were critically inquired into after verdict, some one or more would not be found, in some capacity, the subject of challenge. If challenges for such causes could be inquired into at all after verdict, the consequence would be, that parties would lie by with their exceptions, take the chance of a verdict in their favour, and overset it if against them; it would at least make them careless and indifferent in the investigation of the panel; and thereby introduce the expense, confusion and delay of setting aside verdicts, instead of setting aside jurors, as they came to the book to be sworn.

I think it would go near to overturn the trial by jury, if it were allowed a good reason for setting aside a verdict, that a challenge would have lain to one or more of them. It is against the policy of the law, and runs through its whole system, (and I could, if it were necessary, illustrate the proposition by many instances,—2 Bac. Abr. 221, 222, 560; 1 Ld. Raym. 590, 671; 1 Strange, 480; 2 Strange, 732; Salk. 519; 11 Mod. 2; Cro. Jac. 283; 3 Term R. 689; Id. 452; 4 Burrows, 2252; 2 Burrows, 756, 757; 1 Term R. 190; 1 Tidd, Prac. 260, 16,) to allow a party to take an objection at a later period of the proceeding, after expense, and trouble, and trial, which he might and ought to have taken in an earlier stage. This rule I take to be peculiarly applicable to the case of challenge, for the reasons before mentioned. It would be attended with very inconvenient consequences, if it were permitted that a mere naked cause of challenge to a particular juror, might be brought up after a trial and verdict to defeat the whole. I always took this to be a settled rule, and founded in the wisest and most equitable principles; and I should as soon have expected to have heard an argument to prove that the verdict ought to be set aside, because the plaintiff was an alien enemy, or labored under some other disqualification, which might have been pleaded in abatement, as to hear it maintained that it was competent after verdict to inquire whether a juror was an alien; an infant; a servant; freeholder; of affinity to the party; interested; infamous; favorable. Upon the record no exception appears. None was taken by either party, when, if a cause existed, it ought to have been taken. The books of law furnish not only cases establishing the general principle, that causes of exception to the array or polls must be taken at the time—but meet the very circumstances now urged, either to set aside the rule, or frame an exception to it, which ought not to be made. Try. Per Pais (9th Ed.) 200, it is laid down, that all challenges must be taken before the jury are sworn. Andrews v. Linton, 2 Ld. Raym. 884: If a venire facias be returned by a man who is not sheriff, it is not assignable as error, because the party might have challenged the array for that fault at nisi prius; and therefore it is not assignable that the sheriff was out of the realm, and had no deputy, as the case is in Hen. IV., because it was a good challenge to the inquest. 3 Bac. Abr. 764, tit. "Juries," E, note, it is said to be laid down as a rule, that no juror can be challenged without consent, after he hath been sworn, either in a criminal or civil case, unless for some cause happening since sworn. The statute of 28 Edw. III. c. 13, § 2, which gives a trial de medietate linguae, enacts, that one-half of the

jury shall be denizens, and the other half aliens; but yet if he neglect to pray the benefit of the statute before the return of a common venire, he can neither except to such venire, nor pray a subsequent process de medietate linguae. So, if indicted for felony, and he plead not guilty, if he doth not premise his being an alien, before any of the jury sworn, he hath lost that advantage. 2 Hale, P. C. 272. 2 Lev. 242: Error from Norwich court to B. R., and assigned, that the sheriff, by whom the judgment was given, had not taken the oaths and subscribed the declarations according to 13 Car. II. c. 1. The defendant pleaded, that the oaths and declarations were not tendered to the sheriff. Plaintiff demurred, and resolved, that this is not assignable contrary to the record and admittance of the parties; for this is in effect to say he was not sheriff; because the statute says, upon default, &c., it shall be void; contrary to Hippsly v. Tucke [2 Lev. 184]. And Holt, C. J., in 2 Ld. Raym. 884 (Andrews v. Linton) confirms the report of Levinz, and said he was counsel in Denning v. Norris; and the court held there, that since the defendant had admitted the judge to be a judge by plea to the action, he was estopped to say he was not a judge afterwards. And Holt further said, in this case, that the defendant has all the term to make complaint of any irregularity concerning a writ or execution of it; as the sheriff also has to disavow the return; but if the defendant permits the term to pass without application made to the court, and the return is filed and made a record of the court, every one is estopped to say that the person who returned it was not sheriff. The more direct cases on this point are numerous.

In 21 Vin. Abr. tit. "Trial," 274, 275, many cases are cited from the Year-Books, which established the general rule, that a juror once sworn, cannot be challenged for any cause, unless arising after he is sworn. Wharton's Case (Mich. 44, Eliz.) Yel. 24. Three were indicted of murder, and eleven of the jury sworn; and the trial put off for a tales; on the day of the return the queen challenged one who had appeared the first day, and was sworn for a cause in esse the first day, but then not known to the queen's counsel, to wit, that he was within the distress of Cromer, who was master to Wharton, one of the persons indicted. The justices of B. R. being in doubt, sent to the justices of B. C. whose opinions were that the queen could not have that challenge now, any more than she could have it the first day after the jury was sworn, though the same cause was still continuing. All the cases, however, admit, that after a tales the jurors first sworn may be challenged for cause happening since the tales awarded. This Case of Wharton's is very strong, and has never been controverted. It goes to establish the strict rule in regard to challenge,

that even where no verdict has been given, but where the juror is called a second time on a tales, and is to be sworn over again, (for I take it that upon a tales returnable another day, and not de circumstantibus, the juror must be resworn,) yet the party having omitted to challenge the juror when first called and sworn, cannot afterwards except to him. 2 Hale, P. C. 270. Lord Hale, going over this subject, recognizes this law: he says, indeed, that "upon a tales in felony or treason, the prisoner may challenge the jurors first sworn, peremptorily, for it is possible," he says, "a new cause of challenge may intervene after the former swearing:—but if he challenge for cause, he must show a cause happened after the former swearing." Lord Hale here states the rule to apply as strictly to the prisoner, though in a case of life, as to the queen. Id. 274. He comes over the very case from Yelverton, and says it was there ruled: 1st, That the king should not challenge any of the eleven sworn, unless it be for a cause happening since the swearing; and if it happens before though not known till after, it shall not be allowed. 2nd, That the eleven who were last sworn shall not now be first sworn, but be called as they happen in the panel; and the same law is for the challenge of the prisoner for cause, but he may challenge them peremptorily, &c. Aylett v. Stellam (Car. I.) Style, 100: A new trial was moved for, because two of the jury were of kin to the plaintiff. Rolle said it was not now material, whether they be of kin or no; for the defendant should have taken advantage of that upon his challenge at the trial. Maynard produced an affidavit, &c. Loveday's Case, Style, 129: A new trial was moved for, on an affidavit, that one of the jurors that gave the verdict had a suit at law with the plaintiff at that time, and therefore the trial was not indifferent. But the court said, it could not be, and asked the party why he did not challenge the juror for this cause at the trial, for want of which he had now lost that advantage. The preceding cases and principles would seem to leave no question on this subject. There is also a case which I shall mention among the rest as recognizing the same law; I mean that of Gilbert v. Rider, Kirb. 184, determined in the supreme court of Connecticut. The motion was to set aside the verdict because one of the jurors had not taken the oath of fidelity to the state. Swift contended, that the statute which declared that no person should execute any office, civil or military, who had not taken it, included him, and the objection was unknown to defendant at the trial. But per Tot. Cur.: If to act as a juror is to execute an office within the meaning of the statute, (which we apprehend not to be the case,) yet as the juror was not challenged, though the fact might have been known by inquiring of him, or otherwise, the exception being then waived, comes too late after ver-

dict. The exception does not go to the partiality of the juror, nor affect the obligation he was under to find a verdict according to the truth, and it is not stronger than the want of a freehold, which, though a ground of challenge, hath been repeatedly adjudged insufficient after verdict. By attending to the terms and circumstances of this case, it will appear to bear a close resemblance to the one before the court, and as far as it can be considered an authority, (and I think it has reason and law to support it,) it is adverse to the present application.

The principle which I go upon, is recognized in the following cases;—they establish this general doctrine, that a subsequent discovery shall not be let in to overturn a verdict, where the objection ought to have been made at the trial, and where it is of such a nature as ordinarily to require the party to be prepared with it. Turner v. Pearte, 1 Term R. 717: One of the grounds for a new trial, was an affidavit stating that it had been discovered since the trial, that five out of nine of the witnesses, were interested in the event of the cause. The court refused a new trial; declaring that the regular time to take the objection was at the trial; and though it might be taken after an examination in chief, yet that after a trial, no instance could be found where the objection availed, if not taken at the trial. The court said indeed, that where after a trial it appeared one or more witnesses was interested, it would weigh as a circumstance for granting a new trial, provided the merits were doubtful; but as a substantive objection, they were clearly of opinion it could not be allowed. Grose's opinion places the general principle in a plain light. Walker v. Scott (23 Geo. II.) 6 Bac. Abr. 672: Action for crim. con. Verdict £1000. A new trial moved for on affidavits of its having been discovered since the trial that the woman was not the wife of the plaintiff. But Pr. Cur.: It is an established rule that a new trial ought not to be granted on account of evidence discovered after the trial, which by using due diligence might have been discovered before. It is laid down in divers cases, that the court will not grant a new trial because one of the parties was not prepared at the trial to make out his case; it would be of the most mischievous consequences, &c. In the present case, the defendant ought to have been prepared to have proved the woman was not the plaintiff's wife, which was the gist of the action, &c. In 1 Vent. 30, the court refused to grant a new trial, on affidavit that the foreman was brother-in-law, to one of the creditors of the plaintiff. Three justices of this opinion; but Kelynge for this, and another reason, thought a new trial should be granted. I shall conclude the cases and opinions on this head, which stand opposed to the present motion, with the words of Sir Edward Coke, in Floyd v. Barker, 12 Reporter [Coke] 23, speaking of sworn juries, he says; they are sworn in court as indifferent persons, and the law presumes every juror will be indifferent when he is sworn, nor will the law admit of proof against this presumption. And speaking of averments against jurors he says, "And it will be a cause of infinite vexation and occasion of perjury and smothering of great offences, if such averments and supposals shall be admitted after ordinary and judicial proceeding, and it will be a means ad deterrendos et detrahendos juratores a servitio regis."

The counsel for the defendant were aware of this rule of law, and of its propriety, that a cause of challenge to a juror, was not a cause for setting aside a verdict; but attempted to maintain, that where the cause of challenge was unknown to the party at the trial, the exceptions might be let in; and offered an affidavit of the defendant, simply swearing that "he did not know the juror was an alien." I certainly will not lay it down here, that in every possible case, what would be sufficient to set aside a juror on challenge, must be taken advantage of in that way, or the benefit be lost to the party: there may be many cases supposed, wherein the court would set aside a verdict, upon after-discoveries of the unfitness of a juror, though such matter existed before the trial. If a juror had privately laid a wager on the event of the suit; if a number of them had privately met together after they were summoned, and entered into a resolution to find against, or for, one of the parties right or wrong; if a bribe had been given; if a direct but secret interest transpired; or if any other cause of exception to the array, or to the polls had been discovered, and could be clearly made out and proved, after the trial, and which the party could not, by using ordinary diligence, have been informed of—in such cases, provided the court should think there was any good reason to believe the verdict might have been affected by such circumstances, there would be ground for a new trial; not because the matter was ground of challenge, but because it was an unfair trial. But as to the ordinary and legal disqualifications of jurors, such as citizen, freeholder, relation, servant, and every exception of a general nature, and capable of ascertainment by ordinary care and inquiry, cannot be admitted upon the plea of "ignorance," after verdict. For the question is not whether a man was ignorant of the fact, but whether that ignorance is imputable to the nature and circumstances of the after-discovery; or whether it is deducible from supineness, and that culpable negligence, to which the law allows no privilege. If simply swearing to "ignorance" of a fact, were to put a party on the same ground in regard to challenge after as before verdict, it is easy to see that the rule of making challenges at the trial would be good for nothing; the whole law would be changed ; the mode of trying challenges; the time; the opportunity for the juror and the

party to be heard; and verdicts would many times be overset after a fair trial, merely on the plea of a culpable ignorance. No—if a party comes to set aside a verdict, on the ground of a disqualified juror, he must make a very special case indeed; he must show, from the nature of it, that ordinary diligence could not have effected the discovery; that he was surprised; or that after due inquiry and pains, he had missed or been misled as to the fact.

In the present case, the objection is, that the juror was an "alien;" this, surely, cannot be pretended a secret or extraordinary cause of challenge. Almost any man in the city could have told the defendant whether the juror was a citizen; he might have asked him before he was sworn. In short, though I do not intend to distinguish this from other exceptions of a nature generally susceptible of discovery with due diligence, yet it strikes me, that a plea of ignorance as to the juror, on that score, of all others, is the least entitled to claim a relaxation of the rule of law. When, too, it is taken into consideration, that this was a special jury; the panel of which defendant must have had before the trial; and that upon his striking the jury, he might easily have inquired into their general qualifications, there seems not even a pretence left, for relying on this as an after-discovery; it may be so; but why was it left to wait the event of the verdict? The parties were bound to prepare their challenges—at least, all which related to the general qualifications of the jurors. There might, indeed, exist some extraordinary, secret and unexpected exceptions, which ordinary foresight might not anticipate, or ordinary vigilance detect; and when such cases happen, courts will exercise a legal discretion, and set aside a verdict which may have been tainted by such circumstances—not (as I said before,) on the ground of challenge, but of fraud, unfairness, and secret partiality: for I hold, that in all cases, after verdict, the proof must go further than to show that the juror might or would have been rejected on challenge, it must satisfy the court that the verdict was vitiated from the source; or lay a strong presumption to that effect; otherwise they would not be bound to award a new trial, which is never done but to attain justice. I would observe here, that the defendant states no single circumstance to account for his ignorance of the fact now made the ground of a new trial; it does not appear he ever made any inquiry, or used any sort of means to acquire a knowledge of the qualifications of this, or any other juror. How, then, can there be the least claim upon a court of justice to interfere? It would be holding out a temptation to negligence; it would be more. To set aside a verdict on such grounds, would be to punish one party for the carelessness, if not the criminal supineness, of the other.

Again—viewing the particular exception apart from the general principles I have laid down, as to challenges, and on which my opinion is given,—what is there in it which ought to induce a court of justice to set aside a verdict? Let it be admitted, for a moment, that this was one of those cases of ignorance which could be excused, from the nature and circumstances of the exception; and that no laches were at all imputable to the defendant; still, according to the rule I have before laid down in regard to challenges after verdict, the court should at least be satisfied, that there was a probability the defendant had sustained some injustice from the disqualification of the juror; his having been liable to an objection not taken, of itself not being a ground for setting aside a verdict. Now as to this, the defendant offers no proof —no single circumstance to induce a suspicion that the verdict was more unfavorable to him for the juror's being an alien: if any presumption is to be drawn, it would be the other way, from the situation in which the defendant stood on the record and on the trial —being considered as an alien; and in that light, an alien jury or juror has always been accepted an advantage; but certainly, the incapacity, (not intellectual, but merely political,) to say no more of it, operated with perfect equality between the parties; though an alien, he was equally indifferent between them; in short, he was, to every essential and every impartial result, as between plaintiff and defendant, ab omni exceptione major. On this ground, then, the defendant wholly fails in drawing any argument from the alienage of the juror against the verdict; and this ground alone would be sufficient to repel a motion for a new trial. However I again repeat it, that I wish to be understood as resting my opinion against the motion on the ground that it is not competent for a party to raise up a mere cause of personal challenge, of a general nature, and which might, with ordinary diligence, have been made in season, as a ground for setting aside a verdict, which stands clear of any other objection; and the oath of the party, or any other proof he could make, of his ignorance of the fact, (I mean of a fact of such a nature,) does not in the least vary the case; for ignorance of what a man ought to know, and might know, furnishes no excuse, nor is ever made by a court of justice a ground of relief, where such relief will work injury and loss to other persons.

The defendant's counsel, in the argument, cited a case or two, and as many dicta, in support of his proposition, that any cause of challenge, which, if made in season, would have been sufficient to set aside the juror, would also be sufficient to set aside the verdict, if not known to the party till afterwards; and this proved by his oath to the court. There are certainly some loose opinions and general declarations which might seem to countenance this doctrine; and yet; if closely examined, will turn out to be reconcilable with the law, as I have stated it; or

where irreconcilable, too vague, contradictory, and unreasonable, to overturn or shake the contrary doctrine. The case most relied on is that of Lord Herbert v. Shaw, 11 Mod. 111; [Lady Herbert v. Shaw, Id.] 118. The ground for a new trial there was proof that the Duke of Leeds, father of the Lady Herbert, had written a leter to each of the jurors, desiring their appearance at the trial; and concluding his letter with saying he should take it as a great favour, and be glad of an occasion to show how much he was their humble servant. The new trial was opposed; and principally on this ground; that the defendant's attorney knew of the letter before the trial, and did not make it an objection by way of challenge; it is reported that Holt, Powell, Pervis and Gould refused a new trial, "because the defendant, having notice of such a letter long before the trial, might have moved for a trial at bar, &c.:" and 2nd. It was said, "that if a party have cause of challenge, and knows of it time enough before the trial, and he does not challenge, he shall not have a new trial: contra, if he has not timely notice of it." It is true, that as the words of the court are here put down, it might be inferred, that want of notice of the objection to the juror, let the cause of challenge be what it might, would authorize a new trial: but certainly the court never meant to say that, where a party, by ordinary diligence, and with the means in his power, could have obtained the notice, that in such case he should use his want of notice as an excuse for coming after verdict with the objection. Could they mean to say that parties were not bound to use any diligence to discover whether the jurors were qualified, or not: certainly the defendant must contend for this construction, when he relies upon his mere oath, of being ignorant of a cause of challenge, which was easily ascertained, and obviously of a nature to call for his inquiries. If this idea is annexed to the words of the court in Lady Herbert's Case, it is clear, that there remains no necessity on any party to look to his challenges at the trial; he may wait in torpid ignorance and inattention to the most common and obvious causes of challenge; and after a trial—a fair trial—a satisfactory trial and chance of a verdict—make his very folly and culpable ignorance a ground for oversetting it; and thereby subjecting his adversary, who is in no fault, to the greatest inconvenience: it is evident, those judges could mean no such thing. What they said must be applied to the case before them, and to similar cases. That was a case, not of challenge to jurors for ordinary personal disqualifications, such as alienage; want of freehold; affinity in a near degree, &c.; but because of a secret correspondence between the party or her father and the jurors, amounting to maintenance, at the least: and no doubt, as I have before stated, that wherever a discovery is made after a verdict, of matter which, if it had been known at the

time, would have set aside the juror, and of such a particular nature, as not to fall within the ordinary inquiries of qualification, such discovery, and proof of its being unknown at the time, would be sufficient to set aside the verdict; provided the court were satisfied that justice required the objection to prevail. This is the fair and only legal construction to be attached to the Case of Lady Herbert. The court were speaking of special and secret causes of challenge, which lay out of the ordinary road, and not of those which every party is bound to inquire into; and where, if he fails to do so, his ignorance can never be alleged, as a reason for inverting the order of challenges, and almost subverting the trial by jury. In Wharton's Case, Yel. 24, there it was agreed, that the cause of challenge was unknown, when the juror was sworn, to wit, that he was under the distress of Cromer, Wharton's master; yet that was not held a sufficient reason for dispensing with the general rule in regard to challenges; though it must be allowed, that a fact of that sort seems to lie remote from the common course of inquiry; but because capable of ascertainment with reasonable diligence, ignorance of it was not available; and indeed, it is probable as the law then was, that an objection in the nature of a challenge to a juror or verdict, was not receivable at all.

There are other cases cited by me, where want of notice is either taken for granted or stated; and yet the motion rejected. Dent v. Hundred of Hertford, 2 Salk. 645, was cited, where a new trial was granted, on affidavit that the foreman declared the plaintiff should never have a verdict, whatever witnesses he produced. It does not appear whether this declaration was made before or after the juror was sworn; though, being called foreman, it would seem as if he had been sworn. If so, then it is nothing to the defendant's point; for no challenge would lie; and the only redress was a new trial, for such gross partiality, and indeed, criminal violation of his oath. If it was made before the trial, and unknown to the party, it falls within the description of causes of challenge, of a special and private nature; and where the court interfere, not upon the footing of challenge, so much as to relieve the party, under their general discretion of granting new trials where it is evident the trial was an unfair one, and prejudicial to him, from causes of objection which fall within no common vigilance or care to arrive at. Parker v. Thornton, 2 Ld. Raym. 1410, 1 Strange, 640, a new trial was granted because one Hooper, who was challenged on the principal panel, and the challenge allowed, was afterwards sworn upon the jury as a talesman, by the name of Hook; although it was insisted the trial was satisfactory to Denton who tried the cause. Certainly in this case, the verdict being satisfactory was no reason for upholding it, because in fact only given by eleven jurors; for Hooper was challenged and set

aside, and came in again by the name of Hook, which was a fraud upon the party, and a high misdemeanor in the man. Russell v. Ball, Barnes, Notes Cas. 455: John Pearce was returned on the panel, but did not appear; but when he was called, his son answered and was sworn on the jury; the verdict was set aside, because not found by twelve of the jurors returned on the panel. It is evident that this was a void verdict, as the juror was not returned or named on the panel, and so no juror; besides, here was an evident imposition—the son personating and answering to the name of the father. This was not a case of challenge at all; but a deception on both parties; an irregularity which vitiated the whole proceeding. Norman v. Beaumont, Barnes, Notes Cas. 453: Richard Gearter had been summoned and drawn from the jury box, and put on the panel; but not attending, one Richard Shephard who had been summoned on the crown side, supposing he was called, answered and was sworn; neither party knew of the mistake; after verdict it was found out, and the defendant moved to set it aside. The plaintiff urged that the defendant ought to have challenged Shephard. Per Curiam. By the statute 3 Geo. II., all the twelve persons ought to be drawn from the box; and Shephard's name was never in it; the court are not bound by the record;—here has been no trial; this is no matter of challenge, &c.; verdict set aside. It is observable here, that both the court and counsel considered, that as a cause of challenge, though unknown, the objection was unsustainable; but the court said he was not a juror at all; there had been no trial, &c. These and other cases turning on similar grounds, are all clearly distinguishable from a regular trial, by jurors properly empannelled and sworn, and where the objection consists solely in "challenge," which is a technical term, and comprehends under it all those various causes of objection, which may be alleged against the array or polls propter affectum, defectum, delictum, &c. There is a case reported in Comyn, 601, 602 (Sir Geo. Wynn v. Bishop of Bangor), to this effect: A new trial was moved for; 1st. Because George Wynn, a shower for the plaintiff, on the view gave evidence to the jurors, by arguing against the likelihood that the places shown on the part of the defendant as the limits of their land, should be the boundaries, &c. 2d. That one of the jurors declared at the view, that by what they had seen, (before the shower for the defendant had shown,) they should soon determine the dispute; and afterwards, before the trial, said, Sir George Wynne was a neighbor, and, right or wrong, he would give it for him: and for these reasons, it is said, the court granted a new trial, though Baron Parker seemed to think, that, the words being known before the trial, and for them a challenge might have been taken against the person's being on the jury, that such challenge being

omitted, it was not proper to allege the matter as cause for a new trial. It is not easy to collect from this case, and the expressions, whether the words were known to the defendant or his counsel, before the trial; and if they were, it does not appear that the court would have granted a new trial on that ground alone; it seems one was granted on the reasons assigned. If the words, however, were known previously to the trial, by the defendant, I have no difficulty in coinciding with Parker, that the defendant could not lie by with the objection till after verdict; such a position is contrary to every principle of policy, justice and convenience. Anon., 2 Vent. 173: There is a case reported in 2 Vent. 30, where, on a motion for a new trial, it appeared, the solicitor for the plaintiff had written two letters, to two of the jury, before the trial, importuning them to appear, and setting forth the hardships his client had suffered in the cause, and how he had verdicts for his title; the verdict was set aside for this. This was for the misdemeanor of the party, for embracery; it falls under the head of tampering with the jurors before trial, and not of challenge for legal disqualifications, such as alienage, infancy, want of freehold, affinity, good fame, &c., which all lie open to the ordinary care and inquiry for discovery. And yet, even in such a case as that of practising with a juror, if known before trial, the party must take the objection when he comes to be sworn. 6 Bac. Abr. (4th Ed.) 661, it is said, that where there is good cause of challenge to one of the jurors, but this not known, and consequently could not be taken advantage of at the trial, the court will grant a new trial: and Hyon v. Ballard, 7 Mod. 54, is cited. On looking into the case there is no such rule laid down, or indeed anything relative to this subject; it is, evidently, extracted from the dictum of Holt in Lady Herbert v. Shaw, and the book misquoted. I have before said, that the application of this rule must be confined to causes of exception or challenge, out of the ordinary cause of inquiry and information.

From this review of most of the cases, and perhaps all of any importance on the question, I think it may be pronounced, that they by no means authorize the position maintained on this motion, namely, that alienage of a juror, which the party, after verdict, swears he was ignorant of, is sufficient ground for a new trial. The cases are the other way; and justice and convenience repel the doctrine. My clear opinion is, that all general and ordinary grounds of challenge, such as alienage, infancy, servitude, bad fame, interest, affinity, intimacy, &c., which may be come at by inquiry, must be taken at the trial; and that no pretence of ignorance of such matters can be received to let in the exception after verdict. I have chosen to put my opinion on the general question, and as if the party had proved the fact of alienage: and though I do not at all rest myself

upon this, yet it is clear that the defendant has not proved the fact; and I take notice of it merely that it may not be supposed the court received the affidavit as proving it. The only proof laid before us that the juror is an alien, is the affidavit of Mr. Leiper, which states that since the trial the juror told him he was not a citizen of the United States. Surely what a juror has merely said after a verdict, can never be a ground for impeaching it. It is mere hearsay, and no sort of evidence of the fact. What the plaintiff confesses, may be evidence, but the plaintiff has an interest in the verdict, and the confession, or declaration of a juror, cannot deprive him of it. If the fact is so, and material, it is capable of direct proof. The juror might, perhaps, be allowed to make affidavit of it; or others could be found to prove it; but surely what jurors tell people after a verdict, can never be received as facts, on which the court will sustain a motion to grant a new trial. How easy it would be to set aside any verdict. Jurymen, though they consent, are not always satisfied with what has been done; they may, indeed, wish the verdict set aside; and if any matter which is dropped from them, true or false, may be picked up, and have the force of confessions—it is no difficult matter to see where it will end. I know nothing of the juror in this case, nor of his sentiments; but if he thought the damages high, and wished the verdict set aside, and has gone and told Mr. Leiper he was no citizen, it may be so or not, but certainly it is not proved to the court; the defendant does not even swear that he believes he is an alien, nor produce any other evidence of the fact. If a man comes to set aside a verdict for a cause of this kind, he must lay before the court all the circumstances; he must account for his laches; he must prove the fact; and he must leave nothing to doubt or conjecture. The case of Aylett v. Jewel is in point. Aylett v. Jewel, 2 W. Bl. 1299: A new trial was moved for, on the affidavit of the attorney, that some of the jury had confessed to him, that they drew lots, &c. "But, (as it is said,) there being no affidavits by the jurymen, or any other that was cognizant of this transaction, but merely this hearsay affidavit," the court thought it too dangerous to call a verdict in question, that had been deliberately given, upon so loose and slight a suggestion. And in Vaise v. Delaval. 1 Term R. 11, the court refused the affidavit of the juror himself of such fact.

2. Another ground is taken for setting aside the verdict, the affidavits of William Oliver, and Frederick Kimble, Jr. These deponents each say, "that previous to the trial of this cause, they had several conversations with one Joseph Prince, a juror, who tried the cause; that in these conversations he expressed great resentment against William Duane; and moreover declared frequently, and with great warmth, that he would send him out of the country, if he had power to do it." The defendant swears he did not know of these declarations till after the trial. The counsel for the defendant, on this motion has scarcely more than hinted at this, as a ground for it, yet I shall notice it. It is obvious that these facts, furnished causes of challenge to the particular juror, and fell under the description of challenge to the favor; this species of challenge is by law to be tried by triers, and not by the court: whether the juror would have been pronounced favorable or indifferent by such a tribunal, we cannot say; they might have considered him indifferent as to this question between the parties, although the juror was proved to entertain a general dislike and enmity to the defendant for his personal conduct and political opinions; it is not for us to say what their verdict would have been. Had I indeed been a trier, and these facts proved, I should probably have set aside the juror, in order to lay out of the defendant's way every possible disadvantage, and to avoid all suspicion that any juror acted under a bias of any sort. But this is not our province. This matter cannot come before us, (nor indeed the other of alienage,) now in the garb of a challenge to the juror; the time is passed for that; but the defendant must satisfy us that injustice has been done to him, or that he has sustained, in all probability, some actual injury from the admission of this juror: it is not enough to convince us that had we been triers we should have put the juror aside, after he has been admitted without objection, has been sworn, and rendered a solemn verdict, in concert with eleven others, his companions, against whom no suspicion lies; we cannot set aside such verdict, unless there be something so very strong in the nature of the exception, or something so extravagant in the verdict, as to induce a reasonable suspicion that justice has not been done.

I admit that this kind of complaint against the juror, to wit. that he was secretly his enemy, and harboured resentful opinions of him, falls within that class of exceptions after verdict, and after the proper time of challenge has passed, which will be received by the court as a ground for setting aside the verdict, on proof of its being an after-discovery; because, against such things a party cannot be supposed to come prepared. But, as I said before, he applies to the sound and legal discretion of the court, upon the whole case. The fact, whatever it be, if it existed at the trial, and was not objected, cannot form a substantive ground for setting aside the verdict: the defendant has lost the benefit of using it in that light, to reject the juror, and puts his case to the court. and must make out a sufficient one to set aside the verdict; and certainly the court will always give such objections their

proper weight, on a review of the whole case, and the nature of the verdict—in other words, if they think justice has been done, they will not undo the verdict; if they think otherwise, they will lay hold of such circumstances to give another trial, when without it, perhaps they might not think it justifiable. I am very clear in opinion, that the declarations said to be made by this juror, ought not in this case to prevail against the verdict. In the first place, they by no means relate to the cause between these parties: it is not pretended that he evinced any bias in regard to the particular issue between the plaintiff and defendant; it does not appear he knew of the controversy; the sentiments expressed seem to relate quite to another subject; and unless some special malice or bias, or partiality is proved in reference to the issue, or clearly appears after verdict to have operated on the minds of the jurors, it would be too much for the court, when jurors have been sworn and passed on the issue, to do all away upon a bare possibility that a general dislike to the party may have influenced their judgments in assessing the damages. The presumption of law and charity is, that they have done as they were sworn, to give a verdict according to the evidence. The objection, then, of itself not being of a nature from which to infer direct partiality or bias on the issue, the only remaining question is, whether there be any thing in the verdict which should induce the court to lay hold of this objection, and upon the whole case grant a new trial. Now as to the verdict, it is not pretended to be given contrary to law, or against evidence; or that there has been any mistake of the court: or misbehavior of the party or jury. It is not a motion on the ground of excessive damages: it is not pretended that the defendant can make a better case; or has discovered new evidence; or been surprised: in short, the court think, and the defendant's counsel have not made a question of it, that the verdict, upon the case, the law and the evidence, is a right and satisfactory one: to set it aside, therefore, would be an abuse of our discretion, and a real injury to both parties.

The Case of Fries [Case No. 5,126] was cited in favour of the defendant; the ground for a new trial there was, that "Rhodes, one of the jurors, after he had been summoned as a juror, declared at several places, at several times, and to several persons, that he was not safe at home, for these people; (meaning the insurgents,) that they ought all to be hung; and particularly that Fries (the prisoner) must be hung." The juror was confronted with the witnesses, who attested these declarations, and denied them as pointed particularly at Fries; but admitted he had made use of general expressions indicative of his disapprobation of the conduct of the insurgents. It is unnecessary to give any opinion on the propriety of the decision in Fries' Case [supra]. The judges were divided on this objection, yet I cannot help saying, that in a case of life, and where such a strong and pointed prejudgment of it had been given by one of the jurors, on the very issue, and against the party, and after he was summoned, and which was unknown at the trial, I should have been strongly in favour of a new trial, on the principles I have laid down in this opinion, unless, indeed, there had existed no manner or shadow of doubt of his guilt, upon the law and evidence. But the Case of Fries is quite distinguishable from this: it was a case of life—a case of doubtful law—of contrariety of evidence—a case where the juror was sworn, on several occasions after he was summoned, to have made hostile declarations on the general subject of the treason, and against Fries in particular; and actually declared that he must be hung. This is a case involving a mere assessment of damages—where no law, no contrariety of evidence occurred—no difficulty—and where the expressions of the jurors were made, we know not when; but not after they were summoned; and where they related not at all to the parties—to the issue—or matter they were sworn to try; and finally, where the verdict was consistent with law, authorised by the evidence, and entirely satisfactory to the court. For these reasons, I am for discharging the rule. The counsel who supported the first exception of alienage in the juror, endeavored to draw a distinction between a disqualification of that kind, and disqualifications from affinity, and other challenges of a peremptory nature, by contending that an alien could not be a juror at all; and therefore this was only a trial by eleven jurors. The plain answer to this is, that on the record it appears the verdict was found by twelve lawful men. The defendant comes and says, the first man was not a lawful juror; he was an alien. But to this the law answers, you are estopped now to make that a substantive objection; you cannot be permitted to show it; no judicial notice could be taken of it, for the reasons above assigned; and your proof of the fact amounts to nothing, further than to serve to govern the discretion of the court.